[Cite as *State v. Kryling*, 2023-Ohio-1921.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                        Court of Appeals No.  WD-22-036

       Appellee                                 Trial Court No.  2021CR0221

v.

Christian Kryling                                   **DECISION AND JUDGMENT**

       Appellant                                Decided:  June 9, 2023

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

**{¶ 1}** Appellant, Christian Kryling, appeals the April 29, 2022 judgment of the

Wood County Court of Common Pleas convicting him of aggravated trafficking in drugs.

For the following reasons, we affirm the trial court's judgment.

## A. Procedural Background

{¶ 2} On August 5, 2021, appellant was indicted on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(1)(a), a fourth-degree felony. The charge arose from an incident in which a detective from the Wood County, Ohio Sheriff's Department observed appellant selling methamphetamine to a confidential informant through a controlled buy operation. Appellant was originally charged with aggravated trafficking in drugs through the filing of a complaint in the Bowling Green, Ohio, Municipal Court on April 9, 2021. He was arrested on April 14, 2021, and made his initial appearance that same day. At that time, appellant requested a continuance to consult with counsel. The court granted appellant's request and he was ordered to be held in the custody of the Wood County Sheriff's Department prior to his preliminary hearing. Appellant ultimately appeared before the municipal court on April 19, 2021, where he waived his preliminary hearing. The court then ordered the matter bound over to the Wood County Court of Common Pleas and ordered appellant released on a personal recognizance bond.

{¶ 3} Appellant was indicted by a grand jury on one count of aggravated trafficking in drugs on August 5, 2021. He appeared for arraignment on August 17, 2021. At that time, he was determined to be indigent, was appointed counsel, and entered a not guilty plea to the single count in the indictment.

2.

{¶ 4} The parties appeared for trial on March 23, 2022. During its case-in-chief, the state sought to introduce portions of phone calls recorded during appellant's confinement immediately following his arrest. Appellant objected arguing that the entirety of the phone calls were inadmissible "other acts" evidence as described in Evid.R. 404(B). The state argued that analysis under Evid.R. 404(B) was improper because the statements were admissible as party admissions pursuant to Evid.R. 801(D)(2). The trial court concluded that the entirety of appellant's statements made on the recordings related to the specific sale of methamphetamine underlying his indictment. As a result, the court found that they were admissible and the recordings were played for the jury at trial. The jury found appellant guilty at the conclusion of the single-day trial. On April 26, 2022, the trial court sentence appellant to an 18-month prison term.[1] The trial court's judgment was memorialized on April 29, 2022.

## B. Assignment of Error

{¶ 5} Appellant timely appealed and asserts the following error for our review:

{¶ 6} The trial court erred to appellant's prejudice by admitting statements alluding to other acts of drug dealing.

---

[1] Appellant was also sentenced to an additional 588-day prison term for violating the conditions of his post-release control previously imposed in Hancock County Court of Common Pleas case No. 2015-CR-0239. Appellant does not assign error to the imposition of that sentence.

3.

## C. Trial Proceedings and Factual Background

**{¶ 7}** The only issue on appeal is whether the trial court committed reversible error in admitting certain portions of the recorded phone calls at trial. Therefore, we begin with a summary of the challenged evidence, the parties' arguments regarding the admissibility of that evidence, and the trial court's ruling, before describing each witnesses' testimony at trial.[2]

### *Trial court's Evid.R. 404(B) Ruling*

**{¶ 8}** The charge in this case arose from appellant's sale of methamphetamine to a confidential information ("the C.I.") during a controlled buy operation. Wood County Sheriff's Department Detective-Sergeant Destinie Moore arranged the buy, which occurred on January 27, 2021. Following appellant's arrest, he was held in custody by the Wood County Sheriff's Department. During that time, appellant made two recorded phone calls to non-party A.B. Prior to trial, the state indicated that it planned to use portions of the recorded calls during its case-in-chief as exhibits to supplement Detective-Sergeant Moore's testimony. The portions of the recordings the state sought to introduce, as transcribed by the state, consisted of the following:

### *Recording No. 1*

APPELLANT: "Here's the thing about that, baby, is through BG, right. BG

has somebody they caught doing something wrong. Now this guy [the C.I.]

---

[2] Rulings and testimony described in this decision are not presented in the same order as they occurred at trial.

4.

is from BG.  When he catches a case here, BG says we need your help catching people you can get. Now here I come because I slept with his girlfriend and shit. And he's mad at me, so he says I can get him.  I want to get this guy, right?  However it happened, I came to BG and dealt with him at certain times or whatever, right.  Now I'm saying what he said I gave him isn't what I gave him. Now it's up to the police to prove what's happened.  BG is not worried about anything else. They're only worried about BG.  That's what makes me think I would never deal with anybody in Findlay for that reason.  Watch what you say, man.  I was kind of thinking the same thing but I don't know where it would come from.

### *Recording No. 2*

APPELLANT:  Now I know what I've done in my life. I can remember the day that I've done shit. That's why when they ask me, I do know who I've dealt with in Wood County.  I can remember the day that it happened.  I can remember the day that this charge right here happened.  You know why?  Because I can remember everything.  I remember who I deal with. I remember what I dealt with.  I remember visuals, I remember dates.  I remember times.  I remember who I talk to.  I remember what I said.  I remember what I said on this date right now.  January 21st, when they got

me on this charge, I can tell you exactly where it was.  I can tell you where I parked that day. I can tell you who I parked next to.

* * *

APPELLANT: It was a silver M-F truck like a Suzuki.  Remember those fucking cars.  I parked next to that.  I can tell you who I talked to and what I said.  When I walked in, I can tell you exactly who was sitting where.  I have a good fucking memory for this shit.  See, you guys don't take that into consideration.  You guys don't know what I walk into a place I see what I see and I visualize it.

A.B.:  You know that's a good thing and that's a bad thing.

APPELLANT:  It's a blessing and a curse.

A.B.: Yes, it is.

APPELLANT:  Absolutely.  You're absolutely right about that.  But what I'm saying is for things like this, right here, it's a blessing because I'm telling you right know I know who I've sold to.   I can tell you exactly when I started selling and when I started running for [C.].

A.B.:  Right, right, right.   That's when I met you.

APPELLANT:  I can tell you who was running for who or where I went.  I can tell you where I was way back when.  I can tell you almost to the exact spot I parked.  I can tell you what you were wearing that day.  Can you tell

me what I was wearing that day, the day I met you?  Yeah, I can tell you all that.

*Recording No. 3*

APPELLANT:  So this is what I've got.  There's a guy named [the C.I.].  His girlfriend is [R.T.].  Remember when I told you that me and her were in a hotel room and [D.] knew about it?  This was the whole reason this happened.  He's trying to get back at me for doing that, which I thought they were broke up.  Didn't even say they were together.  Regardless of all they're trying to say, I sold him some illegal stuff or whatever.  I already know everything that happened.  The time that I think they're talking about we were supposed to meet up at Burger King.  I ended up peeping out of the place and there was somebody sitting in a burgundy truck, a female.  I ended up leaving there and going to the trailer park.  I don't know what they have or what they think they have.  I know one thing. Every time I met the dude he was using drugs.  You can't be using drugs and buying drugs for the police.

{¶ 9} At trial, appellant argued that the entirety of these recordings were inadmissible "other acts" evidence and were precluded from being admitted under Evid.R. 404(B).  The state, in turn, argued that Evid.R. 404(B) did not apply to these recordings as they did not constitute the introduction of "other acts" evidence but instead

constituted party admissions as defined in Evid.R. 801(D)(2) and were, therefore, admissible. The trial court determined that all three recordings were admissible because they all related to the underlying incident that gave rise to the indictment, implicitly finding that they were not "other acts." The trial court did not, however, offer any specific analysis related to Evid.R. 404(B) or Evid.R. 801.

{¶ 10} The state then proceeded with its case-in-chief, during which it elicited the following testimony:

### *Testimony of Detective-Sergeant Destinie Moore*

{¶ 11} At the time of the trial, Detective-Sergeant Moore had been employed by the Wood County Sheriff's Department for six years. She spent two years in traffic patrol before being promoted to the detective bureau in 2018. She served on special assignment in narcotics interdiction which involved her performing her work as a plain-clothes undercover officer.

{¶ 12} Detective-Sergeant Moore testified that her investigations generally arose from different places including an anonymous tip line, tips from confidential informants, and tips from informants held in confinement. She noted that there are three categories of informants—citizen informants not expecting anything in return, paid informants, and those individuals seeking to have their own charges reduced or dismissed for providing a tip. She noted that an informant can be both paid and granted reduced or dismissed charges. She stated that most informants, other than citizens who happen to observe

8.

illegal activity, have knowledge where drugs are being sold because they themselves are purchasing and using drugs. The Wood County Sheriff's Department's detective bureau typically utilizes drug purchasers as its informants so that they can "move up the ladder" to arrest the sellers.

{¶ 13} Detective-Sergeant Moore testified that she had developed approximately 60 to 75 sources for information in furtherance of her investigations during her time as a detective. Of those individuals, she has tasked approximately 40 to 65 to perform a controlled buy. A controlled buy is the purchase of drugs by a confidential informant that is observed by law enforcement.

{¶ 14} Her investigation of appellant began approximately six to eight weeks prior to the January 27, 2021 controlled buy when she was contacted by the C.I. The C.I. was known to Detective-Sergeant Moore because he had previously provided her with information in prior investigations. In light of this new tip, she decided to set up a controlled buy between the C.I. and appellant.

{¶ 15} Controlled buys are subject to specific procedural requirements. The procedure involves both "pre-buy" and "post-buy" protocols to "protect the integrity of the investigation." Detective-Sergeant Moore described the general procedural requirements in conjunction with her adherence to the proper protocol in the underlying case.

9.

{¶ 16} Detective-Sergeant Moore testified that all controlled buys are prepared and observed by a team of three detectives. For the January 27, 2021 controlled buy involving appellant, she was accompanied by Detective-Sergeant Mormile and Detective-Sergeant Barta. Pursuant to the pre-buy protocol, all three detectives met with the informant to determine the location of the buy. At that time, they performed a thorough search of the C.I. including having him remove his shoes, searching all pockets, and checking his belt buckle and hat. These searches are meant to prevent an informant from taking any drugs or additional money to the sale. This allows the detectives to ensure that only the money provided to an informant is used in the sale and that only drugs purchased from the target of the buy are returned. She estimated that the search took approximately 15 minutes to complete.

{¶ 17} The C.I. was then provided with a "covert device" to record the buy. The device both records the audio of the parties' interaction as well as provides a live broadcast of the audio to the observing detectives. The live broadcast allows the detectives to determine that a buy took place in real time as well as determine if an informant is in distress. The device was also capable of recording video. Detective-Sergeant Moore testified that she does not ask informants to utilize the video feature until they have experience with controlled buys as attempting to obtain video is more conspicuous and risks detection. In this case, the informant was instructed to only record audio of the transaction.

10.

{¶ 18} After being provided the recording device, Detective-Sergeant Moore prompted the informant to contact appellant through Facebook's messaging service and via cellphone to set up the buy. The C.I. and appellant agreed to meet at a Taco Bell restaurant parking lot. The informant was then dropped off near the established site and walked to the location where the buy was set to occur. Detective-Sergeants Moore and Mormile parked in a nearby parking lot to listen to the audio of the sale. Detective-Sergeant Barta was stationed near the location to visually observe the transaction.

{¶ 19} Appellant did not arrive at the appointed time. The C.I. then called appellant who accused the C.I. of setting him up. Appellant then contacted the C.I. a second time and stated that he would "be there in ten minutes." When appellant arrived, he stated that he thought the occupant of another vehicle in the parking lot may have been a police officer so the C.I. got into appellant's vehicle and they drove to a nearby mobile home park. In doing so, appellant drove past Detective-Sergeant Moore's location. She observed appellant as being the driver of the vehicle and identified him at trial. She also noted the presence of an unidentified female passenger.

{¶ 20} Detective-Sergeants Moore and Mormile followed appellant and the C.I. into the mobile home park. Rather than follow appellant too closely and risk being identified, Detective-Sergeants Moore and Mormile pulled into a parking space to observe the audio of the buy. This resulted in the buy not being visually observed by any member of the detective team.

11.

{¶ 21} Approximately four minutes elapsed from the time the C.I. entered appellant's vehicle until he was observed walking away from the buy. Detective-Sergeants Moore and Mormile picked up the C.I. and began searching him as part of the post-buy protocol. During that search, Detective-Sergeant Moore recovered a green bag containing a substance purchased from appellant as well as the cell phone with the recording device.

{¶ 22} The audio recovered from the recording device was played at trial. At its conclusion, Detective-Sergeant Moore testified that the first voice heard on the recording was the C.I. She testified, over appellant's objection that the video spoke for itself, that appellant could be heard describing the methamphetamine he was selling and that the C.I. could "check it out[,] look at it, taste it, all that shit. It's a big ass chunk."

{¶ 23} Detective-Sergeant Moore stated that after completing the post-buy protocol, she and the detective team then returned to their office. There, they weighed the substance the C.I. purchased and performed a presumptive drug test. That test yielded a "positive presumptive result for methamphetamine." It was then logged as evidence to be sent to the Ohio Bureau of Criminal Investigation ("BCI") for testing. The state then introduced a "BCI submission sheet" that accompanied the substance when it was submitted for testing. Detective-Sergeant Moore confirmed that it was submitted for testing on March 5, 2021.

12.

**{¶ 24}** The state then directed Detective-Sergeant Moore to appellant's recorded phone calls. She noted that the calls were recorded while appellant was held in custody awaiting his release on bond. The recorded conversations described above were played for the jury over appellant's renewed Evid.R. 404(B) objection.

**{¶ 25}** Detective-Sergeant Moore then described a conversation she had with appellant on September 20, 2021. She was informed that appellant wished to speak with her and, after waiving his right to have counsel present, he informed Detective-Sergeant Moore that his sale of drugs was the result of his need to have money to support his own drug addiction. He then described his belief that the C.I. participated in the controlled buy because appellant had previously been in a relationship with the C.I.'s then-girlfriend. Appellant concluded his conversation with Detective-Sergeant Moore by informing her that he limited his drug sales in Bowling Green, Ohio to the C.I. and the C.I.'s girlfriend so that he could only "deal with limited people."[3]

**{¶ 26}** On cross-examination, Detective-Sergeant Moore confirmed that the preparation for the controlled buy, as well as the post-buy protocol, was not recorded

---

[3] Appellant's brief alleges that this conversation should have also been excluded under Evid.R. 404(B). Review of the record shows that appellant objected to only the portion of the conversation in which Detective-Sergeant Moore informed appellant the potential prison term he was facing if he was convicted. This objection was granted and no reference to that portion of the conversation was made at trial. As a result, appellant has not identified any portion of the conversation that was improperly admitted at trial. *See Viox v. Weinberg,* 169 Ohio App.3d 79, 2006-Ohio-5075, 861 N.E.2d 909, ¶ 36 (1st Dist.), citing *Bowden v. Annenberg,* 1st Dist. Hamilton No. C-040499, 2005-Ohio-6515 (holding that errors cannot be predicated on sustained objections).

13.

despite all three detectives having recording devices available to them. She attributed this lack of recording to protecting the safety of the C.I. She also noted that shortly before the buy, she learned that the C.I. was dating appellant's ex-girlfriend. She testified that she later learned from appellant that he believed the C.I.'s motivation for participating in the controlled buy was that the C.I. suspected his girlfriend was cheating on him with appellant. Detective-Sergeant Moore's testimony concluded with her redirect examination in which she confirmed that appellant did not deny selling methamphetamine to the C.I. when she spoke with him on September 20, 2021.

*Testimony of Shervonne Bufford*

{¶ 27} At the time of trial, Shervonne Bufford had served as a forensic scientist at the BCI's Richfield Laboratory for approximately 15 years. She was assigned to the BCI's drug chemistry section. She explained that the BCI is a component of the Ohio Attorney General's office that aids law enforcement in their investigations. Her responsibilities as a forensic scientist included detecting the presence or absence of controlled substances, as described by the applicable law, reporting her findings to the "contributing agency," and then appearing as a witness at trial to explain her findings. A contributing agency is the group or individual that requests the analysis. Bufford identified police departments and sheriff's deputies as examples of contributing agencies.

{¶ 28} The procedure for identifying a controlled substance submitted for analysis is to first give the substance a unique BCI case number. The sample is then identified in

14.

the BCI's computer system and a receipt with the identifying number is provided to the contributing agency. The sample is then stored in a vault until it is randomly assigned to an analyst. The analyst then retrieves the substance from the vault and performs their analysis. The analyst then prepares their report and returns the substance to the vault. This completes the analyst's work related to that specific substance unless they are called to testify in related proceedings.

{¶ 29} Bufford was then presented with the documentation for BCI case number 21-20856. She identified the substance tested in that case number as having been received from the Wood County Sheriff's Department. The investigating officer was identified as Detective-Sergeant Moore. The evidence was received at the BCI lab on March 5, 2021 at its Bowling Green, Ohio office. It was then transferred to the Richfield Laboratory on July 19, 2021.

{¶ 30} Bufford retrieved the evidence from the vault on July 20, 2021. She then opened the sample, noted its appearance for her report, and weighed it. After obtaining a small sample for testing, she performed two "presumptive" tests as part of her initial analysis. Each of these tests were positive for a "phenylamine class" substance that is consistent with the presence of methamphetamine. She then further tested the sample utilizing a gas chromatograph mass spectrometer. This device allows her to identify the chemical make-up of the compound. She then compared it to a known sample of methamphetamine and confirmed that the sample received from Detective-Sergeant

15.

Moore was indeed methamphetamine. Her report confirming these findings was admitted into evidence without objection.

{¶ 31} On cross-examination, Bufford confirmed that there was no request to perform DNA or fingerprint testing on the sample. She stated that these tests are performed by another analyst and would only be performed at the request of the submitting agency.

### *Closing arguments, Jury Deliberations, Verdict, and Sentencing*

{¶ 32} The state presented no additional evidence or witness testimony and rested its case-in-chief. Appellant then made a Crim.R. 29 motion for acquittal. Appellant offered no specific argument and the trial court denied his motion. Appellant then rested his case-in-chief without presenting any testimony or evidence.

{¶ 33} Following closing arguments, the trial court provided the jury with its final instructions and dismissed it to begin its deliberations. The jury returned a guilty verdict finding appellant guilty of aggravated trafficking in drugs. Appellant now asks this court to determine whether the trial court erred in finding that portions of the recordings of his phone calls were admissible at trial.

### II.     Law and Analysis

### A.  Appellant's narrowing of his trial court objection on appeal.

{¶ 34} As a preliminary matter, we note that appellant sought to exclude the entirety of the recorded phone calls as inadmissible "other acts" evidence at trial. Now,

16.

on appeal, appellant directs us to specific statements within those recordings that he argues constituted inadmissible "other acts" evidence as described in Evid.R. 404(B). In light of our analysis below, we find that it is important to recognize this narrowing of the issues on appeal as it is not only proper under the Ohio Rules of Appellate Procedure, but it also helps to properly frame our review of "other acts" evidence in this appeal.

{¶ 35} App.R. 16(A)(2) requires appellants to include "reference to the place in the record where each error is reflected" in their brief. "If reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages of the transcript at which the evidence was identified, offered, and received or rejected." App.R. 16(D). If a party fails to make specific reference to the location of the assigned error in the record, App.R. 12(A)(2) authorizes appellate courts to "disregard" that assignment of error. When trial counsel's objection at trial is broadly stated, appellate counsel may not merely identify general or "overwhelming" errors in the record. *See State v. Jurek,* 52 Ohio App.3d 30, 556 N.E.2d 1191 (8th Dist.1989). The failure to "specifically direct [the court's] attention to [the evidence] which [appellant] contends are objectionable" warrants overruling the assigned error on that basis alone. *Id.* at 34 (holding that appellant's identification of "'overwhelming amount' of irrelevant, inadmissible, incompetent, or unfairly prejudicial evidence" on a recorded conversation, without citation to the specific portions of the tape that were objectionable, warranted disregarding the assigned error under App.R. 12(A)(2) due to lack of specificity).

17.

**{¶ 36}** Here, appellant has identified the specific portions of the recorded calls that he argues constitute inadmissible "other acts" evidence while conceding that other portions of the recording relate directly to the underlying sale and were admissible. In doing so, appellant has avoided the potential that this court would disregard his assigned error pursuant to App.R. 12(A)(2). He has also clarified a threshold issue that we must address prior to reaching the merits of his argument—that is, whether the admission of these challenged statements are subject to review under Evid.R. 404(B) or 801(D)(2)?

### A. The recorded statements appellant challenges on appeal are subject to Evid.R. 404(B) analysis.

**{¶ 37}** The general subject of each of the recordings is appellant's knowledge of the specific sale that resulted in the charges against him and his suspicion as to the C.I.'s identity. In expressing his suspicion, appellant made explicit references to the underlying sale. For example, in recording No. 3, appellant stated that he recalled the sale because he was originally scheduled to meet at a fast-food restaurant but ultimately made the sale in a mobile home park. Detective-Sergeant Moore described this same series of events as they relate to the underlying sale—albeit referencing a different fast-food restaurant than appellant described in the recording. Despite his broad objection at trial, appellant now concedes that the recorded statements directly referencing his sale of methamphetamine to the C.I. are not "other acts" as contemplated by Evid.R. 404(B) as they are direct evidence related to the underlying offense.

18.

{¶ 38} Despite his concession as to some of the recorded statements, appellant nevertheless maintains that the recorded statements referencing "other acts" were inadmissible at trial under Evid.R. 404(B). For example, appellant notes that in recording number 2, he discussed remembering dates and time of his previous drug sales as well as the name of his supplier. It is these types of statements regarding conduct unrelated to the underlying offense, that appellant argues the trial court improperly admitted at trial.

{¶ 39} Having reviewed the record, we find that appellant correctly identifies portions of the recordings as "other acts" evidence. Appellant was charged with a single offense of aggravated drug trafficking for the sale of methamphetamine on January 27, 2021. In the recordings, appellant references his alleged participation in, or at least knowledge of, the illegal sales of drugs other than on the occasion for which he was charged. These statements constitute "other acts" evidence as defined by Evid.R. 404(B) as they are wholly unrelated to the underlying offense. This finding would normally lead directly into our analysis regarding these statements' admissibility under that rule. However, the state argues that this court should analyze the admissibility of this "other acts" evidence under Evid.R. 801(D)(2) instead. For the following reasons, we find the state's argument is without merit.

{¶ 40} Both at trial and in this appeal, the state asks us to ignore the clear implication of Evid.R. 404(B) and to instead analyze the admissibility of appellant's statements solely under Evid.R. 801(D)(2). Specifically, the state argues that because the

19.

statements appellant alleges were improperly admitted were statements appellant himself made, including those statements referencing drug sales unrelated to the underlying offense, that the trial court's admission of those statements should be reviewed under Evid.R. 801(D) as party admissions. As a result, the state argues, our review of the trial court's admission of the recordings should be limited to determining whether all of the recordings constitute party admissions under Evid.R. 801(D)(2) and, if so, we must find that those statements were properly admitted at trial.

{¶ 41} In support of its argument, the state cites *State v. Cody,* 10th Dist. Franklin No. 07AP-142, 2007-Ohio-6776. In *Cody,* the defendant was charged with two counts of arson after attempting to set his former-girlfriend's apartment on fire. *Id.* at ¶ 2-10. Cody had previously left threatening voicemails on his ex-girlfriend's phone. *Id.* As part of his investigation, a member of the Columbus Fire Department's investigation unit recovered the threatening messages. *Id.* The messages were played at trial over Cody's objection. *Id.* He was later convicted of both offenses. *Id.*

{¶ 42} On appeal, Cody argued that the state did not explicitly seek admission of the recordings as a non-hearsay party admission under Evid.R. 801(D) and, therefore, the trial court should have treated the recordings as hearsay and conducted the required hearsay analysis prior to their admission at trial. *Id.* at ¶ 12. In the alternative, Cody argued that the recorded statements did not meet any of the Evid.R. 404(B) exceptions to the prohibition of admitting "other acts" evidence. *Id.*

20.

**{¶ 43}** The Tenth District Court of Appeals found no error in the admission of the recordings, finding that while the state did not specifically mention Evid.R. 801(D) when seeking admission of the statements, it clearly argued that the statements were admissible as party admissions. The appellate court found that "[a]s the statements at issue were those of [the defendant], and offered against him at trial, such statements were *not hearsay* and were properly admissible." *Id.* at ¶ 15. The statements were relevant to the underlying offense as they showed "appellant was upset over the breakup of the relationship and that he engaged in an on-going pattern of controlling and harassing behavior toward [the victim] and her family, both before and after the incident." *Id.* at ¶ 17. The court further held that "because the messages met the requirements of Evid.R. 801(D)(2), their admission was not dependent upon one of the exceptions under Evid.R. 404(B)." *Id.* at ¶ 15. Finally, the court held that "to the extent appellant argues the statements are precluded under Evid.R. 404(B), such evidence was relevant and admissible as it tended to prove identity." *Id.*

**{¶ 44}** Here, the state argues that this holding shows that "where Evid.R. 801(D)(2) is involved, appellate courts have uniformly held that that rule trumps any Evid.R. 404(B) argument that a defendant may make." Through this declaration, the state requests that this court simply determine whether the challenged statements constitute party admissions as defined under Evid.R. 801(D)(2) and that the recordings

21.

were admissible solely on those grounds. This argument improperly expands the holding in *Cody* and its application in other cases.

{¶ 45} In *Cody,* the defendant argued that because his admission was not submitted at trial under Evid.R. 801(D) that the state could only have introduced that evidence by showing that it met one of the Evid.R. 404(B) exceptions. Further, since Cody argued that his admission did not meet any exception under Evid.R. 404(B), it was improperly admitted. Put simply, Cody's argument regarding Evid.R. 404(B) was *contingent* upon the appellate court finding that the admission of evidence as a party admission under Evid.R. 801(D) was improper. By affirming that the evidence was indeed a party admission under Evid.R. 801(D), despite the state's failure to explicitly cite the rule, and that the evidence was directly related to the state's prosecution of the underlying offense (therefore, not "other acts" evidence), the appellate court did not need to address Cody's contingent argument that the state was obligated to submit that evidence pursuant to Evid.R. 404(B). In other words, the court analyzed the disputed statement under Evid.R. 801(D)(2) because it was a party admission and that was the applicable rule. Analysis under Evid.R. 404(B) was simply unnecessary. This limited holding is far from the state's suggestion that Ohio appellate courts have "uniformly held" our analysis under Evid.R. 801(D)(2) "trumps" any analysis under Evid.R. 404(B).

22.

Indeed, we were unable to identify any authority supporting such a definitive proposition.[4]

{¶ 46} Moreover, we note that uniform application of the state's argument regarding *Cody* would essentially carve out an implicit exception to the intended protections established under Evid.R. 404(B) by permitting the admission of any statement made by a defendant without regard to its content. Evid.R. 404(B) is intended to support convictions for acts committed and not based on "the defendant's disposition to commit certain acts." *State v. Kamer,* 6th Dist. Wood No. WD-20-084, 2022-Ohio-2070, ¶ 129, citing *State v. Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. Unrestricted admission of any statement made by a defendant, particularly an arguable confession to uncharged offenses similar to appellant's reference to other drug sales here, would certainly endanger Evid.R. 404(B)'s protection against disposition-based convictions.

---

[4] The state also references additional authority it argues supports the uniform application of its interpretation of the holding in *Cody.* This additional authority is readily distinguishable. In *State v. Hare,* 108 N.E.3d 172, 2018-Ohio-765 (2d Dist.), the Second District Court of Appeals held that the defendant incorrectly argued that his statements should be analyzed under Evid.R. 404(B) when they were submitted as party admissions related to the charged offense under Evid.R. 801(D)(2) at trial, not "other acts" evidence. In *State v. Scarton*, 8th Dist. Cuyahoga No. 108474, 2020-Ohio-2952, the 8th District Court of Appeals held that it was not ineffective assistance for the defendant's trial counsel not to object to the admission of his statement under Evid.R. 404(B) when that statement referred to the charged offense and was admissible as a party admission under Evid.R. 801(D)(2).

23.

**{¶ 47}** Finally, even if the Evid.R. 801(D) analysis the state requests was applicable here, the state's argument that a party admission is admissible as a matter of law is incorrect. While the admission of a party-opponent is not hearsay under Evid.R. 801(D)(2), this does not equate to admissibility at trial. *Bromall v. Select Specialty Hospital – Akron, LLC,* 2022-Ohio-2496, 193 N.E.3d 609, ¶ 52 (8th Dist.). "Admissions of party-opponents, although not hearsay, are still subject to the general rules of admissibility, including Evid.R. 401 and 403." *Id.*, citing *Mowery v. Columbus,* 10th Dist. Franklin No. 05AP-266, 2006-Ohio-1153, ¶ 62. Evid.R. 401 provides that the evidence sought to be introduced must be "relevant" while Evid.R. 403 provides for the mandatory or discretionary exclusion of such evidence based on the weight of its probative value as balanced against other considerations. The state's argument that appellant's statements are admissible solely because they are admissions under Evid.R. 801(D)(2) ignores the relevance of those statements or the weight of their probative value against other considerations prior to their admission. As a result, our acceptance of the state's faulty expansion of the holding in *Cody* to resolve this appeal would deny appellant the opportunity to ensure the recordings were admitted only after they were subject to proper analysis under Evid.R. 401 and 403.

**{¶ 48}** For these reasons, we reject the state's argument that appellant's assigned error should be reviewed under Evid.R. 801(D)(2) alone. As appellant correctly notes, the recordings reflect statements that discuss his sale of drugs to others in various

24.

geographic locations unrelated to the underlying controlled buy—that is, "other acts."

Therefore, we review appellant's assignment of error to determine whether his statements were improperly admitted in violation of Evid.R. 404(B).

**B. The trial court erred in admitting appellant's statements as prohibited under Evid.R. 404(B).**

{¶ 49} Evid.R. 404(B) states "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith." "Other acts" evidence, however, may be admissible for other limited purposes including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *Kamer* at ¶ 129.

{¶ 50} Determining whether "other acts" evidence is admissible requires a specific procedural analysis. First, to be admissible the evidence must meet a two-pronged relevance threshold. That is, the evidence must be relevant to "the particular purpose for which it is offered—i.e., a non-character-based purpose, as allowed by Evid.R. 404(B)" and to "an issue that is actually in dispute—i.e., an issue that is material to the case as required by Evid.R. 401." *Id.,* citing *State v. Smith,* 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, ¶ 37-38. If the evidence meets this relevancy threshold, its admissibility is determined under Evid.R. 403(A), which states relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *Id.*

25.

**{¶ 51}** Whether the trial court erred in determining that the "other acts" evidence was admissible under Evid.R. 404(B) is a question of law that we review de novo. *Kamer* at ¶ 132, citing *State v. Worley,* 164 Ohio St.3d 589, 2021-Ohio-2207,174 N.E.3d 754, ¶ 117. The trial court's weighing of the probative value of admissible evidence against the danger of unfair prejudice is a discretionary judgment. *Id.* Therefore, we review this step in the analysis for an abuse of the trial court's discretion. *Id.*, citing *Hartman* at ¶ 30. While this analysis remains necessary to resolve any Evid.R. 404(B) issue properly raised before the trial court, we need not complete this analysis here for a simple reason—the state did not comport with the perquisites of Evid.R. 404(B) to even allow the trial court to entertain the admission of the disputed evidence.

**{¶ 52}** When a party seeks to admit "other acts" evidence pursuant to Evid.R. 404(B), the rule explicitly requires that party to "provide reasonably notice of any such evidence the proponent intends to introduce at trial so that an opposing party may have a fair opportunity to meet it" and "articulate in the notice the permitted purpose for which the proponent intends to offer the evidence, and the reasoning that supports the purpose." Evid.R. 404(B)(2)(a) and (b).[5]

**{¶ 53}** Clearly, it was incumbent on the state to identify which of the excepted purposes identified in Evid.R. 404(B)(2) it intended to rely on to introduce the otherwise

---

[5] Evid.R. 404(B)(2)(c) also requires that the notice be in writing. The record does not reflect whether the state provided the required written notice. However, appellant does not allege deficient notice and it is not relevant to our resolution of this appeal.

26.

inadmissible "other acts" evidence. The record plainly demonstrates that the state's only argument for admission of the "other acts" evidence is that they constitute party admissions under Evid.R 801(D)(2), a reason that is clearly not identified as an exception in Evid.R. 404(B). At no point, either at trial or in this appeal, did the state indicate that it sought to introduce the statements for one of the purposes identified in Evid.R. 404(B)(2). This failure to comply with the rule necessitates a finding by this court that the trial court erred in admitting the "other acts" evidence. *See State v. Kelley,* 6th Dist. Lucas No. L-16-1098, 2017-Ohio-4475, ¶ 45-48, citing *State v. Nuzum,* 6th Dist. Lucas No. L-15-1122, 2016-Ohio-2744, ¶ 21 (holding that the state's failure to comply with Evid.R. 404(B)(2) constitutes error). For this reason, we find that the trial court erred in admitting appellant's record statements referencing "other acts" into evidence at trial.

### C. The trial court's improper admission of "other acts" evidence was harmless error.

{¶ 54} Having determined that the trial court erred in admitting appellant's recorded statements referencing drug sales other than the controlled buy, we must determine whether that error was harmless. *State v. Moore,* 2021-Ohio-765, 168 N.E.3d 921, ¶ 37 (6th Dist.). Harmless error is "any error, defect, irregularity, or variance which does not affect substantial rights." *Kamer* at ¶ 154; Crim.R. 52(B). "The state bears the burden of proving that the error did not affect a defendant's substantial rights." *Id.,* citing *Moore* at ¶ 33. "When determining whether a trial court's improper admission of other acts evidence affected the substantial rights of a defendant, an appellate court must (1)

27.

determine whether the error prejudiced the defendant (i.e., the error affected the verdict), (2) declare a belief that the error was not harmless beyond a reasonable doubt, and (3) excise the improper evidence from the record, look to the remaining evidence, and determine whether there is evidence beyond a reasonable doubt of defendant's guilt. *Kamer* at ¶ 155, citing *State v. Harris,* 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 27. "In other words, 'an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence.'" *Id.* In its brief, the state argues that the remaining evidence supported appellant's conviction, rendering the erroneous admission of evidence harmless. Following our review of the record, we agree.

{¶ 55} At the outset, we recognize that the similar nature of the improperly admitted "other acts" evidence to the charged offense weighs in favor of finding that the error was not harmless. *Id.* at ¶ 156, citing *State v. Sargent,* 2015-Ohio-704, 29 N.E.3d 331, ¶ 31 (6th Dist.) ("Other acts evidence admitted in violation of Evid.R. 404(B) is particularly likely to result in prejudice—that is, to affect the verdict—when 'the other acts are very similar to the charged offense[.]'"). However, when excising the improperly admitted evidence and looking at the remaining evidence, we find that there is evidence beyond a reasonable doubt of appellant's guilt.

{¶ 56} The remaining evidence at trial showed that the controlled buy comported with the pre-buy and post-buy protocols described by Detective-Sergeant Moore. The

28.

buy was recorded on a covert device carried by the C.I. The audio of the buy was played at trial. Detective-Sergeant Moore confirmed from her notes that the audio reflected appellant's sale of methamphetamine to the C.I., a fact confirmed through chemical testing by Bufford, a forensic analyst with the BCI. Detective-Sergeant Moore also positively identified appellant as a participant in the controlled buy based on her having observed appellant driving past her with the C.I. in the vehicle. Further, the unchallenged portion of appellant's recorded statements included appellant's admission that he sold "something" to the C.I. on the recorded calls. Appellant also stated on the recordings that he knew which sale resulted in his arrest because he had identified the C.I. and knew the details of the sale. During his in-person conversation with Detective-Sergeant Moore, appellant discussed his sale of drugs to the C.I. stating "I understand I did what I did." He then explained to Detective-Sergeant Moore that he was selling drugs because he himself was an addict. He stated "I sold to make sure I had [drugs] myself."

{¶ 57} Appellant, in turn, asked the jury to find reasonable doubt of his guilt due to the lack of recording of the pre-buy and post-buy protocols or any interviews conducted with the C.I., and because of the Detective-Sergeants' lack of visual observation of the sale. This argument ignores appellant's admission on the recorded calls that he sold "something" to the C.I. and his statement to Detective-Sergeant Moore that he sold drugs to the C.I. as a result of his need to continue procuring drugs for himself.

**{¶ 58}** In sum, after excising the improperly admitted evidence, the remaining evidence overwhelmingly shows that appellant was guilty of the charged offense. In this scenario, it is appropriate to find that the improper admission of "other acts" evidence was harmless error. *Kamer* at ¶ 159, citing *State v. Rahman,* 23 Ohio St.3d 146, 151, 492 N.E.2d 401 (1986) ("Cases where imposition of harmless error is appropriate must involve * * * overwhelming evidence of guilt[.]"). For these reasons, we find that the trial court's error in improperly admitting the "other acts" evidence in violation of Evid.R. 404(B) at trial was harmless and does not warrant reversal of appellant's conviction. Therefore, we find appellant's assignment of error not well-taken.

### III.    Conclusion

**{¶ 59}** We find that the trial court erred in admitting "other acts" evidence at trial. However, because the error was harmless, we find appellant's assignment of error not well-taken. Therefore, we affirm the April 29, 2022 judgment of the Wood County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

30.

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.